IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TEXAS GENCO, LP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 04-0100C |
| | ) | (Judge Wolski) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# JOINT PRELIMINARY STATUS REPORT

Pursuant to RCFC Appendix A, Section III.4, plaintiffs, Texas Genco, LP, AEP Texas Central Company, the City of Austin, Texas, and the City of San Antonio, Texas, acting through the Public Service Board of San Antonio (collectively "South Texas Project" or "STP"), and defendant, the United States, respectfully submit their Joint Preliminary Status Report in the above-captioned case.

**(a) Does the court have jurisdiction over the action?**

STP's position: Jurisdiction exists pursuant to 28 U.S.C. §1491(a)(1).

Defendant's position: Defendant asserts that it has not identified any basis at this time upon which to question the Court's jurisdiction to entertain this action.

**(b) Should the case be consolidated with any other case and the reasons therefor?**

STP's position: The case should not be consolidated with any other case. The government has sought consolidation of the SNF cases three times, and has been denied. In response to the most recent such request, the Chief Judge ruled in part that:

> consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages.

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Order of Jan. 30, 2004). This issue is settled.

Plaintiffs also oppose any coordinated or consolidated discovery in the newly-filed spent fuel cases.

Defendant's position: Defendant has previously requested that the Court reassign all of the spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues surrounding the spent nuclear fuel acceptance schedule terms of the Standard Contract. The Court has not granted the Government's request. Nevertheless, defendant continues to believe that reassignment and consolidation of the spent nuclear fuel cases, which would permit resolution of issues surrounding the schedule terms that appear in every Standard Contract, is appropriate. Beyond that request for reassignment, defendant has not identified any other case pending before this Court that involves the specific nuclear power plants at issue in this case and, therefore, has not identified any additional reasons for seeking consolidation with any other cases.

**(c) Should trial of liability and damages be bifurcated and the reasons therefor?**

STP's position: Bifurcation is not appropriate, as the Federal Circuit has already determined that the government has breached its contract with all utilities. *Me. Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1342 (Fed. Cir. 2000).

Defendant's position: Defendant has not identified any reason that the remaining issues in this case should be bifurcated for purposes of any trial of this action, although defendant disputes plaintiffs' representation that the appellate court has found a breach of every Standard Contract.

**(d) Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal and the reasons therefor?**

STP's position: The government's continuing failure to accept spent nuclear fuel and high-level waste has caused substantial damages. However, plaintiffs will incur the great majority of their damages in the future. Accordingly, when future damages may be recoverable is an important issue to plaintiffs. To date, three decisions in "lead" SNF cases have addressed this issue. *See Ind. Mich. Power Co. v. United States,* 60 Fed. Cl. 639 (2004); *Tenn. Valley Auth. v. United States*, 60 Fed. Cl. 665 (2004); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004). It is expected that *Indiana Michigan* will be appealed, and the Federal Circuit may provide guidance on the appropriate procedures for collecting future damages. Guidance on this issue may affect the scope of plaintiffs' current case. Plaintiffs do not want to incur the substantial costs of engaging in the extensive discovery associated with preparing a future damages claim if plaintiffs can bring a later action directed at the future costs. Accordingly, Plaintiffs propose a modest and reasonable stay of all proceedings until December 31, 2004 be entered, at which time a status conference could be held to address the continued desirability of a stay or, if appropriate, active litigation.

Defendant's position: Because, in its May 5, 2004 order, the Court provided that the issue of a stay could be revisited at the preliminary scheduling conference, the Government will restate its position on that issue. As previously explained in the Government's motion to stay, a stay of proceedings is necessary in this and the other newly filed cases to allow for the resolution of legal and factual issues that are common to the cases. These issues include the minimum mandatory schedule for the acceptance of spent nuclear fuel ("SNF") and

high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holders' SNF and/or HLW; the Government's obligation to accept Greater-Than-Class-C radioactive waste; and the ability of contract holders to recover damages incurred prior to the actual partial breach of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 10 C.F.R. § 961.11, or to recover damages, under a partial breach of contract theory, that contract holders allege might be incurred sometime in the future. These issues have been or will be squarely presented in the trials that are currently scheduled to occur between now and January 2005. Resolution of these issues in these lead cases will streamline the Court's consideration of the remainder of these cases.

A decision not to stay the newly filed cases will vitiate the "lead" cases process that the Court instituted in response to the Government's previous motion to consolidate the SNF cases. Specifically, the Chief Judge of this Court selected six cases that it identified as "lead" or "accelerated" cases for the purpose of resolving the legal and factual issues that the Government had presented in various partially-dispositive motions filed in all of the cases existing at that time. One of those cases has already completed a trial regarding the plaintiff's damages, Ind. Mich. Power Co. v. United States, No. 98-486C (Fed. Cl.), three others are scheduled for trial beginning July 12, 2004, Yankee Atomic Elec. Co. v. United States, No. 98-126C (Fed. Cl.), Conn. Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), & Me. Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.); and another "lead" case is scheduled for trial beginning late November 2004,

Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.).[1] Given the significance of the issues in these cases, we anticipate that the United States Court of Appeals for the Federal Circuit will review the decisions in those cases and that the Federal Circuit's rulings will provide dispositive guidance regarding the threshold issues in all of the SNF cases pending before this Court. For instance, we have been informed by plaintiffs' counsel that the plaintiff's damage claim in this case consists mostly of future damages. That is the same type of claim that was dismissed in Indiana Michigan because future damages are not recoverable in a partial breach case.

The Government initially requested that a stay be entered in this case until March 1, 2005, because, by that date, all of the currently scheduled trials would be concluded and decisions may be issued in at least some of the cases. However, because plaintiff has agreed to a stay until at least December 31, 2004, the Government is willing to agree to that proposal. In doing so, the Government would respectfully request that the Court convene a status conference at that time to determine the scheduling of further proceedings in light of the status of the other pending cases.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefor and the proposed duration?**

STP's position: Plaintiffs will not seek a remand and do not expect to seek a suspension except as noted in section (d) above.

[1] No further proceedings have been scheduled in Fla. Power & Light Co. v. United States, No. 98-483C (Fed. Cl.), the sixth "lead" or "accelerated" case, pending this Court's resolution of pending motions in that case. However, the Court has scheduled trial in Sacramento Mun. Util. Dist. v. United States, No. 98-488C (Fed. Cl.), to begin in late January 2005.

Defendant's position: Defendant states that it does not seek a remand of this case at this time, but that the Court should suspend this case for the reasons discussed in the prior section of this report.

**(f) Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

STP's position: Plaintiffs do not presently seek joinder. However, if one of the owner-plaintiffs sells its interest in the South Texas Project, Plaintiffs will seek substitution as necessary and appropriate.

Defendant's position: Outside the context of the issues raised in its motion to reassign the spent nuclear fuel cases to a single judge, defendant has not identified a basis upon which to join additional parties to this action at this time.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56 and, if so, a schedule for the intended filing?**

STP's position: Plaintiffs may file a motion pursuant to RCFC 56 for summary judgment on the subject of breach of contract liability. Such a motion would be filed soon after the stay in this case is lifted.

Defendant's position: Defendant may file a motion for partial summary judgment, similar to those filed in other previously filed spent nuclear fuel cases, regarding the acceptance schedule terms of the Standard Contract; a motion for partial summary judgment regarding the Department of Energy's obligation to accept plaintiff's Greater-Than-Class-C radioactive waste; and, after evaluation of plaintiffs' damages claim, a motion to dismiss plaintiffs' claims based upon the rulings in Indiana Michigan.

**(h) What are the relevant factual and legal issues?**

STP's position: Plaintiffs have incurred costs, and will incur substantial costs in the future because of the government's continuing breach of the contract. The fact of breach has been established. The mechanism or appropriate method for handling claims for future damages has not been conclusively determined. The remaining issue is the amount of damages owed STP. Plaintiffs believe that further developments in other, earlier-filed SNF cases may streamline issues relating to various defenses and theories that the government has been advancing in the SNF cases.

Defendant's position: The relevant legal and factual issues in this case include, but may not be limited to, the following:

1. Whether the Government is liable to plaintiffs for a partial breach of the Standard Contract at issue in this case;

2. The basis and scope of any liability for the partial breach of the Standard Contract;

3. The contractually required schedule for the Department of Energy's acceptance of spent nuclear fuel and/or high-level radioactive waste;

4. The appropriate measure of the plaintiff's damages, if any, arising from any partial breach of the Standard Contract; and

5. Whether the Government is obligated to accept Greater-Than-Class-C low-level radioactive waste pursuant to the Standard Contract.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

STP's position: The parties have discussed settlement, but settlement is unlikely until at least some of the earlier-filed spent fuel cases receive appellate review. Plaintiffs do not expect that alternative dispute resolution would be helpful at this time.

Defendant's position: Defendant represents that the parties have discussed using the time period during any stay of these proceedings to explore the possibility of an amicable resolution of this case and that, although the parties have not yet conducted any detailed communications in this regard, defendant is always willing to explore the possibility of such a resolution. Alternative dispute resolution has not been discussed by the parties.

**(j) Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefor?**

The parties anticipate that if the case is not settled, the parties will proceed to trial. The parties will not request expedited trial scheduling given the guidelines set forth in RCFC App. A, Section III.4(j).

**(k) Are there special issues regarding electronic case management needs?**

The parties are not currently aware of any electronic case management needs.

**(l) Is there other information of which the court should be aware at this time?**

STP's position. In connection with the newly-filed spent fuel cases, the government has requested that the Court enter the same protective order in the new cases that Judge Sypolt previously entered in other earlier-filed cases on May 9, 2002, as well as the order governing access to the government's RIS-web computerized document collection that Judge Sypolt entered on February 1, 2002. The government has also requested that the Court enter the e-mail preservation order that was entered in the prior SNF cases on

November 8, 2001 to confirm the parties' obligations to preserve and search e-mail. The e-mail preservation order actually relieves both parties of their obligation to preserve e-mail, with the exception of certain back-up tapes to the extent they exist. STP is generally agreeable to the entry of these Orders, with some minor modifications. Most notably – by letter dated July 6, 2004 – plaintiffs requested that the government correct a flaw in one provision of the protective order and provide a copy of the e-mail preservation order for plaintiffs' review prior to filing. The government has not yet responded to that request.

Regarding discovery, the government's response below postures extensively about the scope of its discovery on schedule issues. STP has not engaged in any discovery to date. STP will use prior discovery, but defendant has failed to identify any reason why it should be relieved of its obligation to update its discovery and disclosures when active litigation begins in this case. Moreover, rulings in the lead cases or government contentions in this case may develop areas where additional discovery is appropriate. Further, discovery related to issues that bear on future damages may be needed, depending on developments in lead cases. In light of the stay that both parties are requesting, the government's requests regarding discovery are premature. The parties will be in a much better position to assess their needs for discovery once the stay is lifted.

Defendant's position: Because, in its May 5, 2004 order, the Court also provided that the issue of streamlining discovery by, among other things, the stipulated use of discovery from other cases could be revisited at the preliminary scheduling conference, and because that was part of the grounds for the Government's alternative request for coordinated discovery in its April 23, 2004 report, the Government will expand upon its position on that issue. Defendant asserts that various plaintiffs in spent nuclear fuel cases pending before

this Court, including the plaintiff in this case, have taken extensive discovery regarding numerous case-related issues, both through the coordinated discovery proceedings (in which the plaintiffs took 13 depositions of Government witnesses) and in individual spent nuclear fuel cases. Sixty-nine depositions of 48 Government witnesses have been taken in the coordinated discovery and in Yankee Atomic, Commonwealth Edison, Sacramento Municipal Utility District, and Indiana Michigan, and the Government has produced approximately 833,000 pages of documents in the coordinated discovery proceedings and in response to discovery requests served in the three Yankee cases, Indiana Michigan, and Commonwealth Edison. In addition, the Government has provided access to a records database ("RIS-web") maintained by the Office of Civilian Radioactive Waste Management ("OCRWM"), the office charged with implementing the terms of the NWPA and the Standard Contracts. These documents and depositions have covered "schedule" issues as well as the Government's expected defenses to the plaintiffs' known damages claims and have been produced and conducted as recently as June of this year.[2]

The Court's rules of procedure give it "broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803-04 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 16(b), (c); 26(b); 42(b)); see Olivieri v. Rodriguez, 122 F.3d 406, 409 (7th Cir. 1997) ("[a] district judge's discretion in supervising pretrial discovery is broad"), cert denied 522 U.S. 1110 (1998). "Pretrial discovery is time-

[2] Until the Government is provided with the actual claims of each of the plaintiffs, it cannot necessarily identify all of the claims against which it may have to defense or the defenses that it may raise.

consuming and expensive; it protracts and complicates litigation and judges are to be commended rather than criticized for keeping tight reins on it." Olivieri, 122 F.3d at 409. Public officials "should not have to spend their time giving depositions in cases . . . unless there is some reason to believe that the deposition will produce or lead to admissible evidence." Id. at 409-10. Rule 26(b)(2) of the Federal Rules of Civil Procedure, which the Court has adopted, "empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)); see Manual for Complex Litigation §§ 21.422 & 21.451 (1995) (encouraging parties and courts to devise methods "to facilitate the orderly and cost-effective acquisition of relevant information and materials," with a balancing of "efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial" and avoidance of cumulative depositions).

In light of the extensive discovery that numerous plaintiffs have already obtained from the Government – including written discovery, the production of hundreds of thousands of pages of documents, and numerous extensive depositions – the Court, before any plaintiff is allowed to take additional discovery (including new depositions), should require the plaintiff to identify, with specificity, the specific discovery that it needs and the reasons that the discovery which has already occurred does not satisfy those requirements. The Government is prepared to provide the remaining documents, deposition transcripts, and access to counsel for the plaintiff in this case, although counsel for plaintiff has already had access to at least the majority of those documents in his role as counsel of record in

previously filed SNF cases. However, the Government requests that the Court enter the same protective order in the new cases that Judge Sypolt previously entered in other cases on May 9, 2002, with two exceptions: (1) in the first sentence of paragraph 1 of the protective order, the Court add a serial comma after the words “competitively-sensitive information” in defining “Confidential Material;” and (2) in the first sentence of paragraph 4 of the protective order, the Court delete the phrase “solely for the purpose of conducting the above-entitled litigation” and replace it with the phrase “solely for the purpose of conducting litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims.” The Government further requests that the Court enter the same order governing access to the RIS-web that Judge Sypolt entered on February 1, 2002. These two orders must be entered prior to the production of documents and granting of access to DOE’s records database previously provided to counsel in the other utility cases. In addition, the Government respectfully requests that the Court enter the e-mail preservation order that was entered in the prior SNF cases on November 8, 2001, to confirm the parties' obligations to preserve and search e-mail tapes. Absent this order, the Government may be subject to inconsistent and onerous requirements for the production of e-mail.

To the extent that plaintiff wants to take additional discovery beyond that already taken in these cases, the plaintiff should be required to identify with specificity the reasons that the existing discovery does not provide plaintiff with the information that it needs.

July 19, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold Lester, Jr. by s/ Jerry Stouck
HAROLD D. LESTER, JR.
Assistant Director

s/ Kevin B. Crawford by s/ Jerry Stouck
KEVIN B. CRAWFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/ Jerry Stouck
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (Fax)

Attorneys for Plaintiffs
Texas Genco, LP; AEP Texas Central Company; City of Austin, Texas; and City of San Antonio, Texas, acting through the Public Service Board of San Antonio

OF COUNSEL:
Robert L. Shapiro
Peter J. Skalaban, Jr.
SPRIGGS & HOLLINGSWORTH